OPINION OF THE COURT
Peter C. Patsalos, J.
The Village of Kiryas Joel is comprised of some 6,000 to *530 8,000 members of the Satmar denomination, an Hasidic sect with roots in Brooklyn. Joseph Waldman, who owns a home in the village, was expelled from membership in the Congregation Yetev Lev D’Satmar on October 8, 1989. Thereafter, on or about March 25, 1990, Waldman received a letter informing him, inter alia, that as a result of his expulsion his six minor children would not be permitted to attend the congregation’s yeshivas as of March 27, 1990. By order to show cause and petition dated March 27, 1990, the six minor children, by their parents (henceforth petitioners), commenced the instant CPLR article 78 proceeding against the yeshivas and the village Rabbi (henceforth respondents) challenging their expulsion from the schools. Respondents have now filed motions to dismiss (which, because of their completeness, the court deems to be their answers [cf., Matter of DeVito v Nyquist, 56 AD2d 159, 161, affd 43 NY2d 681]). Also pending before the court, inter alia, is an application for contempt.
As an initial matter, the court must reject respondents’ attempts to dismiss the proceeding on jurisdictional and procedural grounds. Contrary to respondents’ intimations, service of process by a party is a mere irregularity, not a jurisdictional defect (see, Matter of Kandel v State Div. of Human Rights, 70 AD2d 817). Furthermore, respondents, represented by counsel, argued the merits before the court and actively participated with the court in discussions spread over three days in an attempt to resolve the matter amicably. Under these circumstances, especially where notice or opportunity to be heard is not at issue, where respondents admit the Rabbi is "generally responsible for educational policy in the private religious schools”, where the schools "like the Congregation are under the rule and authority of the Grand Rabbi in all matters” (bylaws § 3), and where this matter begs for a speedy decision, the court finds any defense based on lack of personal jurisdiction or improper party disingenuous and rejects it as waived. Similarly disingenuous is respondents’ attempt to dismiss the petition on the ground that it contains no prayer for relief when they fail to claim prejudice resulting therefrom, and under such circumstances, the court may permit any such defect to be corrected (see, CPLR 2001). Finally, although a party must normally exhaust all available administrative channels before looking to the courts for relief, the exhaustion rule is not inflexible and need not be followed where to do so would be futile or cause irreparable injury (see, Matter of Good Samaritan Hosp. v Axelrod, 150 AD2d 775). At bar, it is *531 unrefuted that petitioners did send, as requested, a letter seeking a meeting with congregation authorities but no response has been received; meanwhile, the expulsion of the children continues.
Turning to the issue of this expulsion, the court is aware that section 313 (3) (a) of the Education Law acknowledges the "right of a religious or denominational educational institution to select its students exclusively or primarily from members of such religion or denomination * * * or to make such selection of its students as is calculated by such institution to promote the religious principles for which it is established or maintained”, and there is no evidence in the record that the yeshivas in question are anything but private, religious institutions. The court is also cognizant of a line of cases holding, in effect, that courts will not substitute their views for those of religious educational institutions (see, e.g., Matter of Carr v St. John’s Univ., 17 AD2d 632, affd 12 NY2d 802; Hutcheson v Grace Lutheran School, 132 AD2d 599). Nevertheless, it has long been established that courts may review, by way of an article 78 proceeding, actions taken by a school to determine whether it abided by its own rules and whether it acted in good faith or arbitrarily (see, Tedeschi v Wagner Coll., 49 NY2d 652; Grogan v Saint Bonaventure Univ., 91 AD2d 855).
At bar, it is undisputed that the children have exemplary school records, and their expulsion derives solely from a bylaw of the schools that provides in pertinent part: "2. Parents of children in our educational institution (both father and mother) must be qualified to be members of Congregation Yetev Lev in accordance with the bylaws. Whoever is not qualified to be a member or whoever was disqualified of being a member for any reason must withdraw his children from the educational institutions of our Congregation immediately upon receipt of notice from the Congregation or from the director of the institution without any further proceeding, even in mid-semester.” Without addressing petitioners’ challenge to the legality of the bylaws (which is, at the least, beyond the scope of this proceeding), the court finds that it was arbitrary for the authorities to wait until the latter part of March of this year, almost six months after disqualifying Joseph Waldman from membership on October 8, 1989, before following their own rules and notifying him to withdraw his children from school. This is especially so when congregation authorities submit no evidentiary basis for their delay and when the children’s expulsion comes scarcely two months *532 from the end of the school year, when alternative arrangements for school can hardly be made and even if they could, the children would surely suffer adverse psychological effects from any such abrupt transition. In this regard, it is significant to point out that the eldest child is scheduled to graduate this June, and for her and the next eldest child there are no alternative religious grades 9 and 10 in the immediate area. Hence, to the extent that the children’s expulsion came inexplicably six months after the father’s expulsion, it must be annulled as arbitrary and capricious. Moreover, in light of the probable irreparable harm to the children if they are not permitted to complete the school year, the court rejects respondents’ arguments to vacate the stay enjoining congregation authorities from effectuating the children’s expulsion and will continue the stay until the completion of the present school year. Also, owing to possible violence in the village, the court will continue the order of protection for the same time period. Such a "cooling-off” period, reestablishing the status quo ante, will afford petitioners ample opportunity to find viable educational alternatives for the following school year.
Finally, in regard to the pending application to hold respondents in contempt, the requirements for civil contempt are (1) a lawful order, (2) an unequivocal mandate, (3) reasonable certainty that the order has been disobeyed, (4) alleged contemnor’s knowledge of the court’s order, and (5) prejudice to the right of a party (see, Matter of McCormick v Axelrod, 59 NY2d 574). Although petitioners have not, by all appearances, served their contempt papers upon the yeshivas as directed by the court (and in fact do not argue that the yeshivas be found in contempt of court), it is unrefuted that the Rabbi, who controls the educational affairs of the community, was personally served with the court’s order that unequivocally directs "pending the return date of this petition, the respondents shall permit the infant petitioners to attend the United Talmudical Academy schools in Kiryas Joel”. This court has never vacated that order and upon the oral application of the Rabbi’s counsel to do so, reiterated the effectiveness of the order; Justice Rosenblatt of the Appellate Division likewise declined to vacate the order. Furthermore, the Rabbi does not, and cannot, claim ignorance of the court’s order, nor does he deny failure to obey that order, willful disobedience not being a requisite for civil contempt (see, Gordon v Janover, 121 AD2d 599). Lastly, the Rabbi’s action has prejudiced the rights of the infant petitioners, and the court so finds. Since no *533 factual issues are in dispute and the Rabbi has been given every opportunity to defend himself, due process requirements have been met and the court accordingly adjudicates him in contempt of court and fines him $250 for each such day he is in contempt (see, Friendly Ice Cream Corp. v Great E. Mall, 51 AD2d 883, appeal dismissed 39 NY2d 1032). To date, that would include the period March 28-30, 1990, as well as the period henceforth following the Passover recess; the moneys due and owing shall be used to tutor the infant petitioners, wrongfully excluded from the schools. Of course, the respondent Rabbi " 'carries the keys of his prison in his own pocket’ ” and may purge himself of the contempt by obeying the court’s order (Gompers v Bucks Stove & Range Co., 221 US 418, 442, citing In re Nevitt, 117 F 448, 461).
The court need pass on no other issue.
Accordingly, in summary, the motion to vacate the restraining order is denied, the motions to dismiss the proceeding are denied, the article 78 petition is granted to the extent of annulling the children’s expulsion pending the current school year, the order of protection is extended for that same period of time, the contempt motion is granted to the extent of holding the Rabbi in contempt as hereinabove indicated.